UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

THOMAS N. LYNN, SR.,               ]
                                   ]
    Plaintiff,                     ]
                                   ]
    vs.                            ]   2:07-CV-01268-LSC
                                   ]
BIRMINGHAM PRINTING AND            ]
PUBLISHING COMPANY, INC.,          ]
                                   ]
    Defendant.                     ]

MEMORANDUM OF OPINION

I.  Introduction.

The Court has for consideration a motion for summary judgment, which was filed by the defendant, Birmingham Printing and Publishing Company, Inc. ("Birmingham Printing"), on June 30, 2008. (Doc. 17.) Plaintiff Thomas Lynn, Sr. ("Lynn"), filed suit against the defendant for unlawful termination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.* Birmingham Printing's motion for

summary judgment has been briefed by the parties[1] and is now ripe for review.  Upon full consideration, Defendant's motion will be granted.

II.   Facts.[2]

Plaintiff Thomas Lynn, Sr., born in 1945, became an employee of Birmingham Printing in 1997, as a result of a merger between Birmingham Printing and Lynn's former employer, Quality Service Lithographers.  Birmingham Printing is a family-owned commercial printing company with approximately 32 employees.  The majority of those employees work in one of two areas:  sales or production.  Production includes three departments:  prepress, press, and bindery.  From 1997 through 2004, Lynn worked in the

---

[1]Plaintiff filed a motion to exceed the page limit for response memoranda by two pages.  (Doc. 22.)  That motion is GRANTED.  Plaintiff later submitted a motion to file a sur-reply.  (Doc. 28.)  The motion contends that Defendant's reply brief raises "new arguments, issues and allegations that must be addressed."  The proposed sur-reply, however, does not identify any new legal issues raised by the defendant; it only quibbles with the defendant's interpretation of facts that are in the record for this Court's review, and makes further argument about what he believes the facts actually mean.  Plaintiff's motion to file a sur-reply is DENIED.  The Court notes, however, that nothing in the proposed sur-reply changes its conclusions in this case.

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

prepress department, which was generally responsible for making plates that are used on the printing presses. Lynn worked as a stripper, a stripping supervisor, and eventually, supervisor over the prepress department.

In 2004, Lynn was moved from his supervisor position to that of full-time press operator for a new piece of equipment: the Direct Image Press ("DI Press"). Lynn kept his supervisor salary, and from 2004 until February 2006, he was the only employee assigned to operate the DI Press. On February 17, 2006, Arthur Henley, the President of Birmingham Printing, told Lynn that he was being laid off. Representatives for the company have testified that Birmingham Printing could no longer justify paying a full-time employee to operate the press because of the lack of orders for material produced on the DI Press. It is undisputed that Birmingham Printing plans to return the DI Press when the lease expires in May 2009.

While Birmingham Printing still operates the DI Press, no one is assigned to the machine on a full-time basis. Instead, three employees operate the DI Press when necessary: Rusty Dooley, Michael Gay, and Ricky Allums. Dooley is the press department supervisor; Gay is a press operator assigned to the M29 press; and Allums is a press helper assigned to the M29

press. All three employees were hired by Birmingham Printing prior to Lynn's discharge, and all three are younger than the plaintiff.

III. Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving

party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

Under the ADEA, it is "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (quoting 29 U.S.C. § 623(a)(1)). "When a plaintiff alleges disparate treatment, 'liability depends

on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggens*, 507 U.S. 604 (1993)). "That is, the plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.'" *Id.*

    A.    Plaintiff's Prima Facie Case.

The Eleventh Circuit Court of Appeals, "as well as other courts of appeals, uses the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981), to evaluate ADEA claims that are based upon circumstantial evidence of discrimination." *Chapman*, 229 F.3d at 1024. Under the *McDonnell Douglas* framework, "the plaintiff has the initial burden of establishing a prima facie case of discrimination." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997). "Establishment of the prima facie case in effect creates a *presumption* that

the employer unlawfully discriminated against the employee." *Id*. at 1528 (quoting *Burdine*, 450 U.S. at 254).

In order to establish a prima facie case of age discrimination, a plaintiff may show that "(1) plaintiff was a member of a protected group, (2) plaintiff was discharged, (3) plaintiff was replaced with a person outside the protected group, and (4) plaintiff was qualified to do the job." *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1558 (11th Cir. 1988). It is undisputed that Lynn is over forty years-old, that he was discharged, and that he was qualified to do his job as a full-time DI Press operator. However, Birmingham Printing contends that Lynn cannot show he was "replaced" because no one operates the DI Press on a full-time basis. Lynn argues that he was "replaced" by the three younger employees who continue to run the DI Press in his absence.

The Court finds that the undisputed evidence shows Lynn's position was eliminated and he was not "replaced." The three younger employees who continue to run the DI Press are assigned to the positions they held prior to Lynn's termination. They perform their jobs as press department supervisor, press operator assigned to the M29 press, and press helper

assigned to the M29, but they have taken on the additional responsibility of executing Lynn's former job duties when necessary.  When a position is eliminated, however, "replacement is not an issue" in the *McDonnell Douglas* prima facie case.  *Castle*, 837 F.2d at 1559.  Instead, a plaintiff must show "(1) that he was in a protected age group and was adversely affected by an employment decision, (2) that he was qualified for the position held at the time of discharge and (3) evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching that decision."  *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1457 (11th Cir. 1997).

With regard to the third prong of this test, this Circuit has held that "[w]here a particular job position is entirely eliminated for nondiscriminatory reasons, for plaintiff to prevail against his employer he must show that he was qualified for another available job with that employer; qualification for his current position is not enough."  *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082-83 (11th Cir. 1990).  Although Plaintiff contends that Birmingham Printing advertised a position that "paid significantly less" than Lynn's former position shortly *after* his termination,

he has not established that jobs were available at the time of his dismissal—nor has he shown that he applied for or met the qualifications for the position advertised. *See, e.g.*, *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1345 (11th Cir. 2003) ("A general interest in being rehired without submitting an application is not enough to establish a prima facie case of age discrimination when the defendant-employer has publicized an open position.").

The remaining question before this Court, then, is whether Lynn's job was eliminated for nondiscriminatory reasons. This element of Plaintiff's prima facie case, however, is essentially the ultimate question of illegal discrimination in this action. Therefore, for the purposes of summary judgment only, the Court will assume that Lynn has established a prima facie case with regard to his termination claim and turn to Birmingham Printing's proffered reason(s) for its termination decision.

B.    Defendant's Reasons for Termination.

"The effect of the presumption of discrimination created by establishment of the prima facie case is to shift to the employer the burden of producing legitimate, nondiscriminatory reasons for the challenged

employment action." *Combs*, 106 F.3d at 1528 (citing *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 254). "To satisfy that burden of production, 'the defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Id.* (quoting *Burdine*, 450 U.S. at 254-55.) However, in order to meet his burden, the employer must produce "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had *not* been motivated by discriminatory animus," *Id.* (quoting *Burdine*, 450 U.S. at 257), and "there must be 'evidence that [the] asserted reasons for discharge were *actually relied on*' or 'the reasons are not sufficient to meet the defendant's rebuttal burden.'" *IMPACT v. Firestone*, 893 F.2d 1189, 1194 (11th Cir. 1990) (quoting *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 775 (11th Cir. 1982)) (emphasis added).

Birmingham Printing presents two reasons for Lynn's discharge: (1) "the DI Press simply did not produce enough work to justify having a full-time employee assigned to operate it," and (2) "Henley believed that Lynn's misconduct and abusive manner made him expendable." (Doc. 18 at 23.)

Plaintiff argues that Defendant has not presented legitimate, nondiscriminatory reasons for his discharge because the "evidence does not support" these proffered reasons. (Doc. 20 at 23-26.)

Birmingham Printing's burden at this point, however, is only one of production—not persuasion. Birmingham Printing does not have to "prove" its reason(s). *See, e.g.*, IMPACT, 893 F.2d at 1193. Defendant has produced, at a minimum, the sworn deposition testimony and declaration of Henley, the individual who decided to terminate Lynn. Henley's statements include his assertion that he "concluded that, based on the lack of orders for the DI Press, as well as the cost associated with operating the DI Press, Birmingham Printing could no longer justify having a full-time employee operating the DI Press." (Henley Decl. ¶ 27.) Henley continues: "Consequently, based on the lack of work for the DI Press and the history of complaints about Lynn, most notably Marla McCully's insistence that I address Lynn's ongoing behavior, I made the decision to lay off Lynn." (*Id.* ¶ 28.) Henley's statements are admissible evidence of legitimate, nondiscriminatory reasons for Lynn's termination, and they are sufficient to meet Defendant's burden of *production*. "The presumption of

discrimination is rebutted and the employer is entitled to summary judgement unless the plaintiff proffers evidence sufficient to create a genuine issue of material fact that discrimination was actually the reason for the challenged action." *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002).

    C.    Pretext.

Plaintiff denies that Defendant's proffered reasons for his dismissal are the real reason(s) his employment was terminated. "In order to avoid summary judgment," however, Lynn "must produce sufficient evidence for a reasonable factfinder to conclude that *each* of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000) (emphasis added). The Court will begin, therefore, with Birmingham Printing's claim that it discharged Lynn because there was insufficient work to justify assigning a full-time employee to operate the DI Press.

In support of this reason, Birmingham Printing has submitted evidence that it acquired the DI Press in 2004 because it was designed to run certain types of "short-length" jobs that it believed were growing in demand.

Birmingham Printing invested significant capital in upgrading its facility to accommodate the DI Press and sent Lynn to Florida as part of his training on how to operate the DI Press.  Plaintiff has not disputed Defendant's evidence that the DI Press earns less revenue per job than larger, more traditional printing presses, or that the DI Press had to run more jobs than other presses in order to maintain long-term profitability.  Birmingham Printing has submitted exhibits comparing the chargeable production hours recorded on the DI Press, compared to its other printing presses, as well as the number of impressions/jobs printed on the DI Press versus the other printing presses.  The numbers show that the DI Press was running significantly less hours and printing less impressions/jobs than other printing presses with assigned full-time employees.  Defense witnesses have testified that they did not receive enough jobs for the DI Press to justify paying a full-time employee for that press.  Moreover, it is undisputed that Birmingham Printing plans to get rid of the DI Press when its lease expires in May 2009.

    Faced with this evidence, Plaintiff argues that the DI Press was profitable because three employees continued to run the press in his

absence—therefore, "it is hard to conceive that there was not enough work to keep one person employed."³ (Doc. 20 at 26.) Lynn points out that there

---

³Lynn requests an adverse inference based on alleged spoliation of evidence. (Doc. 20 at 27-29.) Plaintiff protests Henley's admitted destruction of Lynn's handwritten logs of the time he charged to particular jobs on the DI Press. (*See* Pl. Dep. at 134-35 for description of time sheets.) Lynn does not dispute that the information in these time sheets was entered into a computer database, and the latter was produced by the defendant. Rather, Plaintiff argues that the handwritten sheets are the "best evidence" to rebut Defendant's assertion that the DI Press was not generating enough work to justify a full-time employee. (Doc. 20 at 28.) Lynn's request for an adverse inference is DENIED because Plaintiff has not established that the destroyed documents would provide relevant information that is any different from what was produced by the defendant.

"Classic spoliation [under Alabama law] involves the idea that the offending party purposefully and wrongfully destroyed evidence he knew was supportive of the interest of his opponent." *Vesta Fire Ins. Corp. v. Milam & Co. Const., Inc.*, 901 So. 2d 84, 96 (Ala. 2004) (internal quotations omitted). Plaintiff never argues in his response memorandum that Henley intentionally destroyed the documents with knowledge that they were material to Lynn's lawsuit. Instead, Plaintiff suggests that the computer data could be manipulated and refutes Defendant's claim that the destruction was an accident with a footnote saying that must be "a coincidence" because an employee who was not responsible for maintaining the records thought they were kept "for years." (Doc. 20 at 28.) Lynn also argues that a showing of bad faith is not required because these time logs are "personnel or employment records" under 29 C.F.R. § 1602.14(a).

Regardless, when making a determination under Alabama law whether sanctions should be imposed for spoliation, a court must consider the importance of the evidence destroyed in the context of the importance of the evidence that was preserved and made available. *Vesta Fire Ins. Corp.*, 901 So. 2d at 94. In this case, sanctions are not justified because there is absolutely no evidence (or allegation) that the information on the time cards was entered incorrectly into the computer database. Plaintiff testified that he worked full days prior to his termination, and the time logs do not reflect twelve-hour days. However, in his deposition, Plaintiff explained that these time entries only show the time that was chargeable to a particular job. (Pl. Dep. at 134-45.) The hours recorded did not include the time he got the press ready, printing problems, or clean-up. (*Id*. at 132-35.) Therefore, he did not dispute the accuracy of a recorded 3.7 chargeable hours on a day he claims he was busy and worked a full shift. (*Id*.) The Court also notes that there is no evidence that Birmingham Printing relied on the handwritten time logs when it made its decision to terminate the plaintiff.

were days the press ran for eleven hours, sometimes on two shifts, after his discharge, and he testifies that he was getting "busier" before he was fired. However, "[a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." *Chapman*, 229 F.3d at 1030. "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Id*.

Here, Birmingham Printing's proffered reason is one that might motivate a reasonable employer: economics. The evidence shows the defendant decided—given the cost of running the DI Press and low number of jobs acquired for the press—that it made more sense to have other employees, who continue to perform their previously-assigned jobs, fill in and run the DI Press when necessary, than to continue to pay one employee a full-time salary to do so. The fact that Birmingham Printing continues to run the DI Press while it is under lease, has three employees run the press at various times, and even that Lynn was busier before his employment was

terminated, does not show or infer that Birmingham Printing's reason is false. Plaintiff is merely quarreling with the wisdom of Defendant's decision. "Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Id.* (internal quotations and citations omitted).

Lynn also contends that Henley's failure to give him a reason for his termination at the time of his discharge, Henley's subsequent comment that he'd "thought about [Lynn being sixty years-old]" and believed the plaintiff could tap into his 401(k), and Henley earlier calling another employee an "old fart" in Plaintiff's presence are additional circumstantial evidence of pretext for age discrimination. Plaintiff cites to an unpublished Eleventh Circuit opinion, *Mock v. Bell Helicopter Textron, Inc.*, 196 Fed. Appx. 773 (11th Cir. 2006), for the proposition that Henley's failure to tell Lynn the reasons for his discharge at the time of his termination is evidence of pretext. (Doc. 20 at 33.) *Mock*, however, is inapposite. In *Mock*, the

plaintiff "insisted" that his employer tell him why he was being fired, and the employer "refused." Then the plaintiff received a letter telling him he had been terminated because of his performance. 196 Fed. Appx. at 774. In this case, Henley told Lynn that something was "bothering him." Plaintiff does not allege that he asked for an explanation, nor that he demanded any reasons for his termination. Instead, Plaintiff asks: "Arthur, my God, do you realize I'm sixty years-old?" and Henley replies: "yeah, we've thought about that, I figured you could tap into your 401(k)." (Pl. Dep. at 164.) Lynn argues that Henley's response is evidence of age discrimination, but a reference to age alone does not indicate discriminatory animus or bias, or imply that age was a reason or motivation for Henley's decision. *See, e.g., Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1329-30 (11th Cir. 1998) (statements must be probative of employment-related animus and discriminatory intent in the decision-making process). Moreover, there is no support for Plaintiff's contention that Henley's "old fart" comment to *another* employee was anything more than a stray remark unrelated to his decision to terminate Plaintiff's employment; there is no testimony regarding when or where, or in what specific context, Henley allegedly used

that term.  *See, e.g.*, *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1169 (5th Cir. 1993) (stray remark by supervisor that the plaintiff was an "old fart" was insufficient).  This evidence, without more, does not create a genuine issue of material fact that Defendant's economic explanation for Plaintiff's termination was pretext for age discrimination.

Because Plaintiff has failed to adduce sufficient evidence to convince a reasonable juror that Birmingham Printing's first reason for his termination was pretext for age discrimination, Defendant is entitled to summary judgment and it is not necessary for this Court to address Plaintiff's alleged misconduct.[4]  *See Chapman*, 229 F.3d at 1037.

---

[4]Plaintiff filed a motion to strike portions of evidence submitted by Birmingham Printing in support of its motion for summary judgment. (Doc. 23.)  The evidence addressed in this motion relates only to Defendant's assertion that one of the reasons for Lynn's discharge was his "misconduct and abusive manner."  Specifically, Plaintiff seeks to strike all testimony and statements about a purported "threat" made by Lynn to another employee.  (*Id*.)  To the extent the motion seeks to strike the evidence entirely from the record, the motion is DENIED.  However, because this Court does not reach the issue of Plaintiff's alleged misconduct in this Opinion, the evidence cited was not considered and did not affect the Court's conclusion that Defendant is entitled to summary judgment as a matter of law.

V.	Conclusion.

For the reasons stated above, Defendant's motion for summary judgment will be granted in all respects.  A separate order will be entered.

Done this 16th day of January 2009.

			_____
			L. SCOTT COOGLER
			UNITED STATES DISTRICT JUDGE
			153671